UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **KENNETH CHARLES SAVAGE** | **06-10169** |
| **SHARON M. SAVAGE** | SECTION A |
| DEBTORS | CHAPTER 7 |
| **RUGBUSTERS, INC. d/b/a SERVPRO OF SLIDELL** | ADVERSARY NO. |
| **BUSINESS RECOVERY SERVICE, INC.** | |
| | **06-1148** |
| PLAINTIFFS | |
| VERSUS | |
| **KENNETH CHARLES SAVAGE** | |
| **SHARON M. SAVAGE** | |
| DEFENDANTS | |

## <u>MEMORANDUM OPINION</u>

Kenneth and Sharon Savage (collectively "Savages" or "Debtors") filed a voluntary petition under chapter 7 of the Bankruptcy Code on March 13, 2006. On June 14, 2006, the plaintiffs, Rug Busters, Inc. d/b/a SERVPRO of Slidell ("Servpro") and Business Recovery Service, Inc. ("Business Recovery") (collectively "Plaintiffs"), filed this adversary proceeding claiming damages for breach of contract, conversion, fraud, fraud and defalcation while acting as a fiduciary, and willful and malicious injury.[1]

The Savages responded that Plaintiffs are not entitled to damages or determination of nondischargeability because their losses were due to the actions of third parties.[2] The Savages

---

[1] Pleading 1.

[2] Pleading 24.

further allege that Servpro did not properly perform or complete mold remediation of their condominium unit ("unit 15").  They filed a counterclaim for damages for breach of contract and for the alleged resultant further damage to their unit.

Plaintiffs responded to the counterclaim averring that the Savages have no right of action to any breach of contract claim  because the claim is property of the estate to be administered by the chapter 7 trustee.[3]  Plaintiffs also allege that the Savages failed to provide adequate electrical power for Servpro to operate the required machinery and failed to obtain and/or pass the necessary fire inspection.  Also, the Savages' revisions to construction projects delayed Servpro's access to unit 15.

At trial, Servpro claimed that it properly performed and completed the work required.  It also claimed that the amounts due to it were nondischargeable pursuant to 11 U.S.C. §523(a)(2)(A), (a)(4) and (a)(6) because the Savages had diverted the funds earmarked for remediation for other purposes.  The Savages alleged that the work was poorly performed, not completed and the delays by Servpro caused additional damages.  As a result, the Savages claim that nothing is due to Servpro.

A trial on the merits was held on February 8 and 9, 2007.  At the conclusion of the trial, the Court took the matter under advisement.

Venue is proper, and the Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§157 and 1334.

---

[3] Pleading 30.

## I. Facts

The Savages own a home in a development commonly referred to as Port Louis. Port Louis is a collection of fifty-three (53) town homes grouped in common buildings. It is managed by the Port Louis Owner's Association ("PLOA"), a non-profit Louisiana corporation properly formed and registered with the Secretary of State. The PLOA is operated through a board of directors composed of a president, vice president, secretary and treasurer.

On January 29, 2004, an electrical fire broke out in the common wall between unit 15, owned by the Savages, and unit 16, owned by David Wilbur ("Wilbur"). The cause of the fire has not been determined although arson was eliminated as a possibility.

Scottsdale Insurance Company ("Scottsdale") was the insurer of the town homes under a policy acquired by the PLOA. The policy insured all property owned by the PLOA against damages caused by fire. The Savages were not named or additional insureds under the policy.

The damage to units 15 and 16 was extensive. The fire started on the first floor and traveled through the wall breaking through the roof on the third floor. Significant water damage was also sustained as a result of fire hoses used to quench the conflagration. Following the fire, both units were uninhabitable.

In April of 2004, the board of the PLOA met and voted to allow the Savages to manage the reconstruction of units 15 and 16 as well as the insurance proceeds and claims filed with Scottsdale.[4] The Savages were given authority to execute construction contracts with third parties for the restoration of the structure, a responsibility of the PLOA. They were also given signatory authority

---

[4] Exhibits 10 and 11.

3

on a special checking account, the PLOA Fire Restoration Account ("Fire Account").[5]  The Fire Account was  opened by the PLOA to handle the costs associated with the reconstruction of units 15 and 16.  The only deposits into the Fire Account were the proceeds received from the PLOA insurance policy and those of the PLOA.  The Fire Account required the dual signatures of both Savages in order to withdraw funds.  On April 23, 2004, the PLOA wrote Scottsdale advising them that the Savages had been authorized by board resolution to negotiate and settle the insurance claims of the PLOA against Scottsdale and resulting from the fire.[6]

The Savages contracted with Marino Construction ("Marino") for the restoration of units 15 and 16.  Marino started the demolition, roof and other structural repairs to the units but encountered significant problems with mold. Scottsdale was contacted and retained Rimkus Consultants Group, Inc. ("Rimkus"),  a company specializing in environmental testing.  The units tested positive for mold and other pathogens, and Rimkus provided a "Mold Remediation Scope of Work" ("Scope of Work") to remedy the problem.[7]

Servpro was contacted by Kevin Perrier of Crawford & Company, the independent adjuster for Scottsdale, and asked to estimate the costs of performing the Scope of Work outlined by Rimkus. Servpro inspected the property and estimated the cost to perform the work at $33,308.21.[8] Scottsdale approved the estimate, and on May 25, 2004, Scottsdale  forwarded check no. 1798410

---

[5] Exhibits 11 and 12.

[6] Exhibit 10.

[7] Exhibit 16.

[8] Exhibit 2.

4

in the amount of $33,308.21 to the Savages to cover the costs of remediation.[9]   The Savages

deposited the check into the Fire Account on June 2, 2004.  The check indicates that it is for mold

remediation.[10]

On May 27, 2004, Kenneth Charles Savage (hereafter, when referring to Kenneth Savage,

the Court will use the singular "Savage") signed an Authorization to Perform Services and Direction

of Payment  form ("First Authorization"),[11] authorizing Servpro to perform the remediation work

and Scottsdale to remit the funds approved for remediation directly to Servpro.  The Authorization

provided:

> If for any reason the check should come to or be made payable to Customer,
> Customer agrees to pay SERVPRO immediately upon receipt of the check
> from the Insurance Company....Any and all charges for services not
> reimbursed by the Insurance Company are the responsibility of the Customer
> and are to be paid upon completion of the work.

Servpro was unaware that Scottsdale had already remitted funds earmarked for mold remediation.[12]

Servpro conducted a physical inspection of the units the day after the First Authorization was

signed.  At the time of the inspection, the units did not have electrical service.  Under the Scope of

Work, the units were to be scrubbed with wire brushes and all debris HEPA-vacuumed.  After this

was completed, air scrubbers and de-humidifiers were to be run in the units for twenty-one (21) days

---

[9] Exhibit 7. The check is written to the order of "Port Louis Owners Assn."

[10] Noted on the check is  "MOLD REMEDIATION TO BUILDING."

[11] Exhibit 3.

[12] On October 12, 2004, Savage signed a second Authorization to Perform Services and
Direction of Payment  ("Second Authorization") with Servpro.  Exhibit 4. This authorization was
to remediate further water damage.  The direction of payment was "Self Pay," so Servpro was
not expecting Scottsdale to pay it directly for this work.  On October 14, 2004, Servpro billed
Savage for this service in the amount of $1,216,40.  Exhibit 5.

to ensure that any remaining spores or other pathogens were reduced to acceptable levels. Rather than wire brush the units, Servpro elected to use soda blasters, pressurized sprayers that use baking soda powder, to remove the mold.  Because these units required electricity, Servpro did not begin work until mid to late October 2004 when a construction electrical pole was supplied to the units.[13]

In the interim, the relationship between the Savages and Servpro deteriorated.  The Savages were anxious for the work to begin but stymied by the lack of electricity to the project.  Servpro was frustrated that the term of the contract was extended over a six month period.  By October, 2004, when the remediation began in earnest, both sides were anxious for the work to begin and complete.

Servpro representatives testified that work under the First Authorization began in mid to late October 2004.   After working for approximately four weeks, Servpro alleges that it completed the work.

The First Authorization states that "[a]ny and all charges for services not reimbursed by the Insurance Company are the responsibility of the Customer and are to be paid upon completion of work."[14]

The Scope of Work requires that clearance testing be performed and the property pass that testing.[15]  However, no clearance sampling, as required under the Scope of Work, was performed.

Servpro did not receive any payment for its work.

---

[13]  Marino had not been able to secure the necessary permits from the Parish for electrical service to the units until September, 2004.  As a result, Marino used generators to perform renovation work. prior to September.

[14] Exhibit 3.

[15] Exhibit 16, p. D-1.

On May 9, 2005, Servpro assigned its right to collection to Business Recovery.[16]  On May 9, 2005, Plaintiffs filed suit in state court against the Savages and the PLOA.  The suit was stayed prior to judgment on March 13, 2006, when the Savages filed a petition under chapter 7 of  the Bankruptcy Code.

By the time of trial, significant mold was evident in the units.  The origin of the mold is subject to dispute.  Servpro claims that the existing mold is as a result of the ongoing construction in the units and additional damages due to Hurricane Katrina.  The Savages claim that the existing mold is due, in part, to Servpro's failure to properly perform the contract.

**II. Law and Analysis regarding Plaintiff's Complaint**

Plaintiffs first allege that the Savages breached their contracts with Servpro by failing to pay for the mold remediation work performed. Mr. William M. Feaheny, Jr.,  an expert in mold remediation offered by Servpro, testified that significant mold exists in the property today.  He also testified that the origin of the mold is indeterminable.

The extent of the work performed was not established at trial,[17] and Mr. Feaheny's report indicates that "it is impossible at this time to determine the success or quality of Servpro of Slidell's remedial work."[18]

---

[16] Exhibit 23.

[17] Servpro introduced some of its job diaries.  Exhibit 19.  The job diaries did not establish that the job was performed and completed according to the Scope of Work.  Also, Servpro could not adequately explain why it did not have all of the job diaries.  Servpro also introduced some pictures of units 15 and 16.  Exhibit 22.  The pictures were inconclusive because they were neither dated nor labeled.

[18] Exhibit 17, p. 2.

Mr. Feaheny testified that only through clearance testing could anyone determine if the work performed had been effective.  Servpro did not perform clearance testing itself, nor did it hire an independent agency to conduct clearance testing.[19]  Mr. Feaheny's concludes in his report:

> Due to the absence of any third party qualification of ServPro of Slidells' work performance within the appropriate timeframe and now deteriorated condition of the property, it is not possible to qualify the work completed by ServPro of Slidell in 2004.[20]

As the plaintiff, Servpro bears the burden of proving that the services it performed were complete and effective.[21]  The First Authorization states that "[a]ny and all charges for services not reimbursed by the Insurance Company are the responsibility of the Customer and are to be paid upon completion of work."[22]  Servpro has not proven that it completed the job.

The Scope of Work requires that clearance testing be performed and the property pass that testing.[23]  Servpro testified at trial that clearance testing is generally performed by an independent lab in order to ensure objectivity, but Servpro did not retain a lab or advise the Savages that they should do so.  As a condition of the work Servpro accepted, the burden lay with it to retain the testing lab.  Only after receiving clearance, would Servpro have been entitled to remuneration.

Because significant mold exists on the property and its source cannot be determined, the

---

[19]  Servpro testified, and its testimony was not refuted, that State regulations require the employment of an outside testing facility in these circumstances in order to ensure objectivity and compliance.

[20] Exhibit 17, p. 5.

[21] Under Louisiana law, "[t]he burden of proof in an action for breach of contract is on the party claiming rights under the contract."*Terry F. Day, Inc. v. Moore*, 815 So.2d 335, 337 (La.App. 4 Cir. 2002).

[22] Exhibit 3.

[23] Exhibit 16, p. D-1.

8

Court cannot determine if Servpro properly performed its duties.  Therefore the claims asserted by Plaintiffs are denied.

Because the Court has found that the Savages owe no debt to Servpro, it is unnecessary to reach the issue of dischargeability under section 523.

### III.  Law and Analysis regarding the Savages' Counterclaim

The Savages filed a counterclaim for damages for breach of contract and for the alleged resultant further damage to their unit.  This cause of action arose prior to the date the Savages filed their bankruptcy petition.  Property of the estate includes "causes of action belonging to the debtor at the time the case is commenced."[24]  Because the cause of action is property of the estate, the chapter 7 trustee is the proper party to assert the claim.[25]  Therefore, Court agrees with Plaintiffs that the Savages have no right of action to assert the counterclaim.  Because the Savages failed to include this cause of action in their Schedules or Statement of Financial Affairs, the Court will order them to amend those documents as part of this opinion.

### IV. Conclusion

Plaintiffs have not proven that Servpro performed or completed their contracts for mold remediation with Savage.  As such, the Court finds that the Savages do not owe any amount under the contracts.  Therefore, the claims asserted by Servpro are denied.  Because the Savages do not

---

[24] *Louisiana World Exposition v. Federal Insurance Co.*, 858 F.2d 233, 245 (5th Cir. 1988) (citations omitted); *also see* 11 U.S.C. § 541(a).

[25] *Wieburg v. GTE Southwest Inc.*, 272 F.3d 302, 306 (5th Cir. 2001)(citations omitted); *also see* 11 U.S.C. § 704(a)(1).

9

have standing to bring the counterclaim, their claims are denied.   A separate Judgment in Accordance with this Memorandum Opinion will be entered.

New Orleans, Louisiana, April 13, 2007.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge